Neama Rahmani (State Bar No. 223819)
  *efilings@westcoasttriallawyers.com*
Ronald L. Zambrano (State Bar No. 255613)
  *ron@westcoasttriallawyers.com*
Nicholas A. Yasman (State Bar No. 325488)
  *nick@westcoasttriallawyers.com*
WEST COAST EMPLOYMENT LAWYERS, APLC
1147 South Hope Street
Los Angeles, California 90015
Telephone: (213) 927-3700
Facsimile: (213) 927-3701

Attorneys for Plaintiff,
PATRICIA CAPUTO

UNITED STATES EASTERN COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| PATRICIA CAPUTO, an Individual, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM SERVICES, LLC., a Delaware Limited Liability Company; and SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., an Illinois corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 1:23-cv-01346-KES-CDB <br><br> **FIRST AMENDED COMPLAINT** <br><br> 1) FEHA Disability Discrimination; <br><br> 2) Failure to Engage in The Interactive Process; <br><br> 3) FEHA Failure to Accommodate; <br><br> 4) FEHA Retaliation; And <br><br> 5) Retaliation in Violation of Labor Code § 1102.5. <br><br> **DEMAND FOR JURY TRIAL** |

//

//

Plaintiff, PATRICIA CAPUTO, (hereinafter referred to as, "Plaintiff" or "CAPUTO"), an individual, in her complaint against Defendants, AMAZON.COM SERVICES, LLC (hereinafter referred to as, "AMAZON") and SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. (hereinafter referred to as "SEDGWICK") (hereinafter collectively referred to as "Defendants") respectfully alleges, avers, and complains, as follows:

## INTRODUCTION

1. This is the First Amended Complaint in an action brought by the Plaintiff, CAPUTO, pursuant to California statutory, decision, and regulatory laws. Plaintiff was an employee of Defendant, AMAZON, at all times herein mentioned. Defendant SEDGWICK is liable for Plaintiff's retaliation claims under the theory of aiding and abetting retaliation under the Fair Employment and Housing Act ("FEHA"). (See *Raines v. US Healthworks,* 2023 15 Cal. 5th 268).

2. Plaintiff alleges that California statutory, decisional, and regulatory laws prohibit the conduct by Defendants herein alleged, and therefore Plaintiff has an entitlement to monetary relief on the basis that Defendants violated such statutes, decisional law, and regulations.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this court by virtue of the Defendant AMAZON's Notice of Removal filed on September 11, 2023.

4. Venue in this Court is proper by virtue of the Defendant AMAZON's Notice of Removal filed on September 11, 2023.

//
//
//

## **PARTIES**

5. Plaintiff CAPUTO is, and at all relevant times mentioned herein was, an individual residing in the County of Kern, CA.

6. Defendant AMAZON is and all times herein mentioned has been a Delaware Limited Liability Company registered with the State of California, with the capacity to sue and to be sued, and doing business at 1601 Petrol Rd. Bakersfield, CA 93308.

7. Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. (hereinafter "SEDGWICK") is and all times herein mentioned has been an Illinois corporation registered with the State of California, with the capacity to sue and to be sued, and doing business with a principal place of business located at 225 30 St., Roseville, CA 95678.

8. Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendants and were at all times herein acting within and outside the scope and purpose of said agency and employment. Plaintiff further alleges that as to each Defendant, whether named or referred to as a fictitious name, said Defendants supervised, ratified, controlled, acquiesced in, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions, of each remaining Defendant.

9. The true names and capacities of the Defendants named herein as Does 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

//
//
//

PLAINTIFF PATRICIA CAPUTO'S FIRST AMENDED COMPLAINT

# **FACTUAL ALLEGATIONS**

10. All of the following allegations and alleged facts are being pled upon Plaintiff's information and belief.

11. On or around October 21, 2021, Plaintiff CAPUTO was hired as an Associate in the Ship Dock for Defendant AMAZON at the company's distribution center named "Bakersfield Fulfillment Center 1" (hereinafter "BFL1"). Specifically, Plaintiff's duties included removing boxes from conveyor belts, moving pallets, helping stock merchandise, printing labels, and scanning packages. Plaintiff CAPUTO performed all of her job duties exceptionally well and was never written up or disciplined in any form for performance issues or other misconduct.

12. On or around December 12, 2021, Plaintiff CAPUTO suffered an injury to her left knee which progressively worsened over the next two weeks.

13. On or around December 28, 2021, Plaintiff CAPUTO was treated by a doctor at Central Valley Occupational Medical Group (hereinafter "CVOMG"), a medical provider referred to her by Defendant AMAZON. Plaintiff CAPUTO's doctor at CVOMG prescribed her restrictions of (1) "no bending or twisting the left knee;" (2) "no kneeling or squatting;" and (3) "no prolonged standing/walking 60% of the shift." Plaintiff CAPUTO promptly relayed her restrictions to Defendant AMAZON on the same day she received them.

14. On December 29, 2021, Defendant AMAZON relayed Plaintiff CAPUTO's restrictions to their "claims administrator," Defendant SEDGWICK. Shortly thereafter, Plaintiff CAPUTO's claim was assigned to Lexus Newhouse, a Claims Representative for SEDGWICK, who was based in Roseville, CA, approximately 300 miles from AMAZON's BFL1 in Bakersfield, CA.

//

//

15. On January 3, 2022, Plaintiff CAPUTO was contacted by Sarah Merrill, a Risk Manager at Defendant AMAZON, who instructed Plaintiff CAPUTO to return to her work site to provide an updated work status to "Amcare," Defendant AMAZON's own purported medical care facility located within AMAZON's distribution center that Plaintiff CAPUTO worked at. Ms. Merrill informed Plaintiff CAPUTO that "Site Amcare determines if your restrictions can be accommodated." Ms. Merrill also informed Plaintiff CAPUTO that if it is determined that her restrictions cannot be accommodated by the site, she will need to initiate a Leave of Absence administered by Defendant SEDGWICK.

16. Plaintiff CAPUTO promptly visited her jobsite's Amcare to seek accommodations of her restrictions. Defendant AMAZON's Amcare personnel reclassified the restrictions originally prescribed to Plaintiff CAPUTO by her medical provider at CVOMG to simply "50% disability," then informed Plaintiff CAPUTO that her restrictions could be accommodated if she simply works four-hour shifts because that is 50% of her normal eight-hour shifts, and that her new shifts would begin at 4:30AM instead of her normal 12:30AM. Defendant AMAZON's Amcare personnel seemingly ignored Plaintiff CAPUTO's restrictions of no bending, no twisting, no kneeling, and no squatting that were prescribed to her by her doctor at CVOMG. Plaintiff CAPUTO, who could not drive due to her knee injury, also voiced concerns to AMAZON about finding transportation in the middle of night to work for the new 4:30AM shift.

17. On January 7, 2022, Plaintiff CAPUTO emailed Sarah Merrill to inform her that AMAZON's Amcare created "accommodations" for Plaintiff that do not actually accommodate the restrictions prescribed by her doctor. Sarah Merrill then relayed Plaintiff's concerns to AMAZON's safety team at BFL1, specifically, Donald Sullivan, Stephen Nored, and Diana Awoleke. Approximately three hours later, an AMAZON Amcare employee, Janie Dyer, replied to Sarah Merrill that "Asset Tagging B is the only position that meets the restrictions placed by the Occupational provider."

18. On January 9, 2022, at 4:30AM, Plaintiff CAPUTO showed up to her first four-hour shift and

immediately spoke to Defendant AMAZON's on-site human resources representative, who told Plaintiff that AMAZON did not have the requisite "link" for Plaintiff to work, and instructed Plaintiff to just sit down until her shift was over at 8:30AM. Plaintiff obliged.

19. After returning home after her shift on January 9, 2022, Plaintiff CAPUTO logged into "A to Z," Defendant AMAZON's app that tracks employee attendance, and learned that Defendant AMAZON subtracted four hours from Plaintiff's "Unpaid Personal Time" in violation of the restrictions given to her by AMAZON's own Amcare personnel. Plaintiff immediately emailed Sarah Merrill to express her frustrations about how (1) AMAZON's site Amcare failed to accommodate the restrictions prescribed to her by her actual doctor at CVOMG; and (2) AMAZON's site Amcare even failed relay their own, manufactured restrictions of "50% disability" to AMAZON's human resources representatives and automated attendance system, despite being located within the same building. Ms. Merrill replied the next morning stating that she has escalated Plaintiff's concerns "to the team of safety managers at BFL1."

20. On or around January 11, 2022, Defendant AMAZON moved Plaintiff CAPUTO to the Asset Tagging B position. Plaintiff dutifully began her duties on the Asset Tagging B team but found that the new position still required her to occasionally perform tasks in violation of her restrictions. Plaintiff persisted to the best of her ability out of fear of retaliation and her need for pay to sustain her livelihood.

21. On February 4, 2022, Plaintiff CAPUTO emailed Sarah Merrill once again to express her frustration that Defendant AMAZON is not accommodating her restrictions, resulting in "hardship and distress" for Plaintiff. Ms. Merrill, who works from her home approximately 130 miles from BFL1, replied to the email insisting that AMAZON is accommodating Plaintiff's restrictions because the Asset Tagging B position "fall[s] within your physician's restrictions."

//

//

22. On June 27, 2022, Plaintiff CAPUTO signed a reading that "Employee voluntarily separates Employee's employment with Amazon effective upon OACR issuance." Nowhere in the agreement was it stated that Plaintiff CAPUTO could never work for Amazon again or that employee releases any rights to return to her employment with the company at a later date. Additionally, the document was never signed by AMAZON or any representative or agent of AMAZON.

23. On July 6, 2022, Sarah Merrill notified Lexus Newhouse from Defendant SEDGWICK that Defendant AMAZON can no longer accommodate Plaintiff CAPUTO because Plaintiff has been on "light duty" for 180 days in violation of Defendant AMAZON's uniform policy that the company does not accommodate "light duty" accommodations for its Associates for more than 180 days. Beginning that day, Defendants AMAZON and SEDGWICK placed Plaintiff CAPUTO on a leave of absence from July 9, 2022 until August 25, 2022.

24. On July 20, 2022, Plaintiff CAPUTO visited the doctor at CVOMG that was referred to her by Defendant AMAZON. Plaintiff's doctor reiterated restrictions of modified duty and relayed the restrictions to Lexus Newhouse at Defendant SEDGWICK. On July 22, 2022, Ms. Newhouse forwarded Plaintiff's restrictions to Sarah Merrill, who did not reply.

25. On July 27, 2022, Lexus Newhouse from Defendant SEDGWICK emailed Sarah Merrill stating that "the OACR was issued on 07/12/2022." Ms. Merrill promptly replied, "WOOHOO! Thank you!"

26. On August 29, 2022, Defendant AMAZON sent Plaintiff CAPUTO a letter requesting that she "return to work" on the "next scheduled workday following August 25, 2022." On the same day, AMAZON's US Case Manager in Disability & Leave Services, Girish Kishan Chothani, emailed Plaintiff return to work paperwork and information. The same day, an email was internally circulated between twenty-three AMAZON employees informing them that Plaintiff CAPUTO

"has been released to return to work on August 26, 2022."

27. On or around August 29, 2022, Plaintiff CAPUTO dutifully returned to work as requested by AMAZON and worked at her regular full-time shifts as an Associate in the Ship Dock.

28. On October 14, 2022, Sarah Merrill emailed Lexus Newhouse from Defendant SEDGWICK, naming Plaintiff CAPUTO in the subject line and asking Ms. Newhouse, "[d]id we ever get a resignation on this one?" and alleging in frustration that Plaintiff CAPUTO "returned herself to work." Ms. Newhouse replied affirmatively.

29. On December 1, 2022, Sarah Merrill emailed Lexus Newhouse from Defendant SEDGWICK stating that Amber Manglona, her supervisor, advised to "just have [Plaintiff CAPUTO's termination] processed as of today's date." Ms. Merrill then instructed AMAZON's human resources department to terminate Plaintiff CAPUTO "as of today's date," yet no one in AMAZON's human resources department acted on the instruction. Ms. Merrill sent follow-up emails instructing AMAZON to terminate Plaintiff CAPUTO's employment again on the evening of December 1, again on December 5, and once more on December 7, this time adding that AMAZON's roster is still reflecting that Plaintiff is employed as of December 7.

30. On or around December 6, 2022, Plaintiff CAPUTO felt a severe pain in her abdomen, clocked out of work for AMAZON for her final time, and immediately visited her doctor, who advised Plaintiff that she needed an emergency colonoscopy that would require a short medical leave of absence from work to recover from the emergency procedure. Plaintiff immediately requested the leave for her recovery from the procedure from AMAZON, and the request was approved on the same day by Paola Ramirez, ERC-DLS Support in AMAZON's Disability & Leave Services department. Plaintiff's return to work date, per AMAZON, was December 11, 2022.

//

//

PLAINTIFF PATRICIA CAPUTO'S FIRST AMENDED COMPLAINT

31. On December 7, 2022, Plaintiff CAPUTO underwent a successful emergency colonoscopy procedure.

32. On or around December 8, 2022, Plaintiff's doctor extended her medical leave through December 13, 2022. Plaintiff immediately contacted Defendant's Employee Resource Center ("ERC") on December 8, 2022, and spoke with Representative Annie Garnita (hereinafter referred to as "Ms. Garnita"). Plaintiff notified Ms. Garnita of her of the extension. Ms. Garnita immediately informed Plaintiff that her medical leave extension had been approved. Ms. Garnita further informed Plaintiff that the deadline for Plaintiff to send in her medical notes was on or around December 19, 2022.

33. On or around December 9, 2022, an unidentified representative of Defendant AMAZON's Disability & Leave Services department called Plaintiff CAPUTO while she was on her approved and protected leave and informed Plaintiff that Defendant AMAZON was terminating her employment. Plaintiff was not given a reason for her termination on this phone call despite requesting one. Later that same day, Plaintiff received a direct deposit for her final paycheck from Defendant AMAZON.

34. On December 12, 2022, Diana Cruz, an Amazon Disability & Leave Services Case Manager, finally replied to Sarah Merrill's December 7 email that requested AMAZON to terminate Plaintiff CAPUTO. Ms. Cruz stated to Ms. Merrill that Plaintiff CAPUTO's termination from Defendant AMAZON was processed that morning, at approximately 9:30AM on December 12, 2022. Also on December 12, 2022, an unidentified representative from Defendant AMAZON's human resources department created a "Trouble Ticket" stating that Plaintiff CAPUTO was terminated from AMAZON on December 6, 2022, the same day she was informed of her need for an emergency colonoscopy.

//
//

35. On December 13, 2022, AMAZON Disability and Leave Services representative Mercedes Galaz sent an internal email entitled "Leave for - patricia caputo," which reiterated that Plaintiff was "called by site HR on 12/12 to inform she is terminated."

36. On December 23, 2022, Plaintiff CAPUTO submitted an appeal of her termination to Defendant AMAZON, claiming that her termination was in error. The next day, Plaintiff was called by Josh Sturridge, HR Support Sr. Administrator for AMAZON, who advised that Plaintiff CAPUTO can re-apply to AMAZON if she wishes, but that he would be closing her case because "no further actions are required."

37. Per an internal message between AMAZON representatives in February 2023, Defendant AMAZON emailed Plaintiff CAPUTO on January 26, 2023, explaining that she was terminated because her unpaid personal time balance went negative. The email further stated that, "As outlined in the attendance policy, associates must maintain their UPT balance and having a negative UPT balance is a violation of this policy." Plaintiff CAPUTO is informed and believes that her medical leave in December 2022 was a substantially motivating factor in Defendants AMAZON and SEDGWICK's decision to terminate her employment, and that her protected complaints about Defendants AMAZON and SEDGWICK's failure to accommodate her disabilities throughout 2022 also contributed to the decision to terminate her employment.

38. Plaintiff has timely filed a Complaint of Discrimination with the Department of Fair Employment and Housing and obtained a Right to Sue letter dated July 10, 2023. As such, Plaintiff has exhausted her administrative remedies to pursue claims under the Fair Employment and Housing Act ("FEHA").

//
//
//
//

## FIRST CAUSE OF ACTION

### FEHA Disability Discrimination

### (Plaintiff CAPUTO Against All Defendants)

39. Plaintiff incorporates all paragraphs 1-38 above as though fully set forth herein.

40. Defendant AMAZON is a business entity regularly employing at least the minimum number of employees upon which certain legal duties and obligations arise under various laws and statutes, including FEHA. At all times herein mentioned in this complaint, Government Code §§ 12940 and 12926.1 were in full force and effect, binding on Defendant, and Defendant was subject to its terms.

41. Defendant SEDGWICK is a business entity regularly employing at least the minimum number of employees upon which certain legal duties and obligations arise under various laws and statutes, including FEHA. At all times herein mentioned in this complaint, Government Code §§ 12940 and 12926.1 were in full force and effect, binding on Defendant, and Defendant was subject to its terms.

42. Plaintiff is, and all times herein was, an "employee" who suffers from a "disability" as defined by Government Code §§ 12926, et seq. and 129401, et seq. and California Code of Regulations, Title 2, which limits one or more major life activities.

43. Plaintiff timely filed a complaint of discrimination with the Department of Fair Employment and Housing alleging inter alia violations of Government Code § 12940, including, but not limited to § 12940(a), (m), and (n), and all other applicable provisions, fully exhausting Plaintiff's administrative remedies, and has been issued as Right to Sue Letter, conferring jurisdiction on this court over these claims.

//

44. On or around October 21, 2021, Plaintiff CAPUTO was hired as an Associate in the Ship Dock for Defendant AMAZON at the company's distribution center named "Bakersfield Fulfillment Center 1" (hereinafter "BFL1"). Specifically, Plaintiff's duties included removing boxes from conveyor belts, moving pallets, helping stock merchandise, printing labels, and scanning packages. Plaintiff CAPUTO performed all of her job duties exceptionally well and was never written up or disciplined in any form for performance issues or other misconduct.

45. On or around December 12, 2021, Plaintiff CAPUTO suffered an injury to her left knee which progressively worsened over the next two weeks.

46. On or around December 28, 2021, Plaintiff CAPUTO was treated by a doctor at Central Valley Occupational Medical Group (hereinafter "CVOMG"), a medical provider referred to her by Defendant AMAZON. Plaintiff CAPUTO's doctor at CVOMG prescribed her restrictions of (1) "no bending or twisting the left knee;" (2) "no kneeling or squatting;" and (3) "no prolonged standing/walking 60% of the shift." Plaintiff CAPUTO promptly relayed her restrictions to Defendant AMAZON on the same day she received them.

47. On December 29, 2021, Defendant AMAZON relayed Plaintiff CAPUTO's restrictions to their "claims administrator," Defendant SEDGWICK. Shortly thereafter, Plaintiff CAPUTO's claim was assigned to Lexus Newhouse, a Claims Representative for SEDGWICK, who was based in Roseville, CA, approximately 300 miles from AMAZON's BFL1 in Bakersfield, CA.

48. On January 3, 2022, Plaintiff CAPUTO was contacted by Sarah Merrill, a Risk Manager at Defendant AMAZON, who instructed Plaintiff CAPUTO to return to her work site to provide an updated work status to "Amcare," Defendant AMAZON's own purported medical care facility located within AMAZON's distribution center that Plaintiff CAPUTO worked at. Ms. Merrill informed Plaintiff CAPUTO that "Site Amcare determines if your restrictions can be accommodated." Ms. Merrill also informed Plaintiff CAPUTO that if it is determined that her

restrictions cannot be accommodated by the site, she will need to initiate a Leave of Absence administered by Defendant SEDGWICK.

49. Plaintiff CAPUTO promptly visited her jobsite's Amcare to seek accommodations of her restrictions. Defendant AMAZON's Amcare personnel reclassified the restrictions originally prescribed to Plaintiff CAPUTO by her medical provider at CVOMG to simply "50% disability," then informed Plaintiff CAPUTO that her restrictions could be accommodated if she simply works four-hour shifts because that is 50% of her normal eight-hour shifts, and that her new shifts would begin at 4:30AM instead of her normal 12:30AM. Defendant AMAZON's Amcare personnel seemingly ignored Plaintiff CAPUTO's restrictions of no bending, no twisting, no kneeling, and no squatting that were prescribed to her by her doctor at CVOMG. Plaintiff CAPUTO, who could not drive due to her knee injury, also voiced concerns to AMAZON about finding transportation in the middle of night to work for the new 4:30AM shift.

50. On January 7, 2022, Plaintiff CAPUTO emailed Sarah Merrill to inform her that AMAZON's Amcare created "accommodations" for Plaintiff that do not actually accommodate the restrictions prescribed by her doctor. Sarah Merrill then relayed Plaintiff's concerns to AMAZON's safety team at BFL1, specifically, Donald Sullivan, Stephen Nored, and Diana Awoleke. Approximately three hours later, an AMAZON Amcare employee, Janie Dyer, replied to Sarah Merrill that "Asset Tagging B is the only position that meets the restrictions placed by the Occupational provider."

51. On January 9, 2022, at 4:30AM, Plaintiff CAPUTO showed up to her first four-hour shift and immediately spoke to Defendant AMAZON's on-site human resources representative, who told Plaintiff that AMAZON did not have the requisite "link" for Plaintiff to work, and instructed Plaintiff to just sit down until her shift was over at 8:30AM. Plaintiff obliged.

52. After returning home after her shift on January 9, 2022, Plaintiff CAPUTO logged into "A to Z," Defendant AMAZON's app that tracks employee attendance, and learned that Defendant

AMAZON subtracted four hours from Plaintiff's "Unpaid Personal Time" in violation of the restrictions given to her by AMAZON's own Amcare personnel. Plaintiff immediately emailed Sarah Merrill to express her frustrations about how (1) AMAZON's site Amcare failed to accommodate the restrictions prescribed to her by her actual doctor at CVOMG; and (2) AMAZON's site Amcare even failed relay their own, manufactured restrictions of "50% disability" to AMAZON's human resources representatives and automated attendance system, despite being located within the same building. Ms. Merrill replied the next morning stating that she has escalated Plaintiff's concerns "to the team of safety managers at BFL1."

53. On or around January 11, 2022, Defendant AMAZON moved Plaintiff CAPUTO to the Asset Tagging B position. Plaintiff dutifully began her duties on the Asset Tagging B team but found that the new position still required her to occasionally perform tasks in violation of her restrictions. Plaintiff persisted to the best of her ability out of fear of retaliation and her need for pay to sustain her livelihood.

54. On February 4, 2022, Plaintiff CAPUTO emailed Sarah Merrill once again to express her frustration that Defendant AMAZON is not accommodating her restrictions, resulting in "hardship and distress" for Plaintiff. Ms. Merrill, who works from her home approximately 130 miles from BFL1, replied to the email insisting that AMAZON is accommodating Plaintiff's restrictions because the Asset Tagging B position "fall[s] within your physician's restrictions."

55. On June 27, 2022, Plaintiff CAPUTO signed a document read that "Employee voluntarily separates Employee's employment with Amazon effective upon OACR issuance." Nowhere in the agreement was it stated that Plaintiff CAPUTO could never work for Amazon again or released any right to return to her employment with the company at a later date. Additionally, the document was never signed by AMAZON or any representative or agent of AMAZON.

//
//

PLAINTIFF PATRICIA CAPUTO'S FIRST AMENDED COMPLAINT

56. On July 6, 2022, Sarah Merrill notified Lexus Newhouse from Defendant SEDGWICK that Defendant AMAZON can no longer accommodate Plaintiff CAPUTO because Plaintiff has been on "light duty" for 180 days in violation of Defendant AMAZON's uniform policy that the company does not accommodate "light duty" accommodations for its Associates for more than 180 days. Beginning that day, Defendants AMAZON and SEDGWICK placed Plaintiff CAPUTO on a leave of absence from July 9, 2022 until August 25, 2022.

57. On July 20, 2022, Plaintiff CAPUTO visited the doctor at CVOMG that was referred to her by Defendant AMAZON. Plaintiff's doctor reiterated restrictions of modified duty and relayed the restrictions to Lexus Newhouse at Defendant SEDGWICK. On July 22, 2022, Ms. Newhouse forwarded Plaintiff's restrictions to Sarah Merrill, who did not reply.

58. On July 27, 2022, Lexus Newhouse from Defendant SEDGWICK emailed Sarah Merrill stating that "the OACR was issued on 07/12/2022." Ms. Merrill promptly replied, "WOOHOO! Thank you!"

59. On August 29, 2022, Defendant AMAZON sent Plaintiff CAPUTO a letter requesting that she "return to work" on the "next scheduled workday following August 25, 2022." On the same day, AMAZON's US Case Manager in Disability & Leave Services, Girish Kishan Chothani, emailed Plaintiff return to work paperwork and information. The same day, an email was internally circulated between twenty-three AMAZON employees informing them that Plaintiff CAPUTO "has been released to return to work on August 26, 2022."

60. On or around August 29, 2022, Plaintiff CAPUTO dutifully returned to work as requested by AMAZON and worked at her regular full-time shifts as an Associate in the Ship Dock.

61. On October 14, 2022, Sarah Merrill emailed Lexus Newhouse from Defendant SEDGWICK, naming Plaintiff CAPUTO in the subject line and asking Ms. Newhouse, "[d]id we ever get a

resignation on this one?" and alleging in frustration that Plaintiff CAPUTO "returned herself to work." Ms. Newhouse replied affirmatively.

62. On December 1, 2022, Sarah Merrill emailed Lexus Newhouse from Defendant SEDGWICK stating that Amber Manglona, her supervisor, advised to "just have [Plaintiff CAPUTO's termination] processed as of today's date." Ms. Merrill then instructed AMAZON's human resources department to terminate Plaintiff CAPUTO "as of today's date," yet no one in AMAZON's human resources department acted on the instruction. Ms. Merrill sent follow-up emails instructing AMAZON to terminate Plaintiff CAPUTO's employment again on the evening of December 1, again on December 5, and once more on December 7, this time adding that AMAZON's roster is still reflecting that Plaintiff is employed as of December 7.

63. On or around December 6, 2022, Plaintiff CAPUTO felt a severe pain in her abdomen, clocked out of work for AMAZON for her final time, and immediately visited her doctor, who advised Plaintiff that she needed an emergency colonoscopy that would require a short medical leave of absence from work to recover from the emergency procedure. Plaintiff immediately requested the leave for her recovery from the procedure from AMAZON, and the request was approved on the same day by Paola Ramirez, ERC-DLS Support in AMAZON's Disability & Leave Services department. Plaintiff's return to work date, per AMAZON, was December 11, 2022.

64. On December 7, 2022, Plaintiff CAPUTO underwent a successful emergency colonoscopy procedure.

65. On or around December 8, 2022, Plaintiff's doctor extended her medical leave through December 13, 2022. Plaintiff immediately contacted Defendant's Employee Resource Center ("ERC") on December 8, 2022, and spoke with Representative Annie Garnita (hereinafter referred to as "Ms. Garnita"). Plaintiff notified Ms. Garnita of her of the extension. Ms. Garnita immediately informed Plaintiff that her medical leave extension had been approved. Ms. Garnita further

informed Plaintiff that the deadline for Plaintiff to send in her medical notes was on or around December 19, 2022.

66. On or around December 9, 2022, an unidentified representative of Defendant AMAZON's Disability & Leave Services department called Plaintiff CAPUTO while she was on her approved and protected leave and informed Plaintiff that Defendant AMAZON was terminating her employment. Plaintiff was not given a reason for her termination on this phone call despite requesting one. Later that same day, Plaintiff received a direct deposit for her final paycheck from Defendant AMAZON.

67. On December 12, 2022, Diana Cruz, an Amazon Disability & Leave Services Case Manager, finally replied to Sarah Merrill's December 7 email that requested AMAZON to terminate Plaintiff CAPUTO. Ms. Cruz stated to Ms. Merrill that Plaintiff CAPUTO's termination from Defendant AMAZON was processed that morning, at approximately 9:30AM on December 12, 2022. Also on December 12, 2022, an unidentified representative from Defendant AMAZON's human resources department created a "Trouble Ticket" stating that Plaintiff CAPUTO was terminated from AMAZON on December 6, 2022, the same day she was informed of her need for an emergency colonoscopy.

68. On December 13, 2022, AMAZON Disability and Leave Services representative Mercedes Galaz sent an internal email entitled "Leave for - patricia caputo," which reiterated that Plaintiff was "called by site HR on 12/12 to inform she is terminated."

69. On December 23, 2022, Plaintiff CAPUTO submitted an appeal of her termination to Defendant AMAZON, claiming that her termination was in error. The next day, Plaintiff was called by Josh Sturridge, HR Support Sr. Administrator for AMAZON, who advised that Plaintiff CAPUTO can re-apply to AMAZON if she wishes, but that he would be closing her case because "no further actions are required."

PLAINTIFF PATRICIA CAPUTO'S FIRST AMENDED COMPLAINT

70. Per an internal message between AMAZON representatives in February 2023, Defendant AMAZON emailed Plaintiff CAPUTO on January 26, 2023, explaining that she was terminated because her unpaid personal time balance went negative. The email further stated that, "As outlined in the attendance policy, associates must maintain their UPT balance and having a negative UPT balance is a violation of this policy." Plaintiff CAPUTO is informed and believes that her medical leave in December 2022 was a substantially motivating factor in Defendants AMAZON and SEDGWICK's decision to terminate her employment, and that her protected complaints about Defendants AMAZON and SEDGWICK's failure to accommodate her disabilities throughout 2022 also contributed to the decision to terminate her employment.

71. Plaintiff has timely filed a Complaint of Discrimination with the Department of Fair Employment and Housing and obtained a Right to Sue letter dated July 10, 2023. As such, Plaintiff has exhausted her administrative remedies to pursue claims under the Fair Employment and Housing Act ("FEHA").

72. Plaintiff CAPUTO is informed and believes, and thereon alleges, that her termination was because of her physical disability and for seeking the reasonable accommodation of taking medically recommended days off of work.

73. As a direct and legal result of Defendant's conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including, but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorney's fees, all to her damage in an amount according to proof.

74. Said actions justify the imposition if punitive damages in that Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amount to malice, and in conscious disregard of

Plaintiff's rights. Based on the foregoing, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

## SECOND CAUSE OF ACTION

### Failure to Accommodate in Violation of FEHA

### (Plaintiff Against All Defendants)

75. Plaintiff incorporates all paragraphs 1 through 74 above as though fully set forth herein.

76. Plaintiff CAPUTO suffered from a FEHA protected disability at various times throughout her employment with Defendants.

77. Defendants were aware of Plaintiff's disability, set forth above, because Plaintiff informed Defendants of her disability and provided medical notes to Defendants.

78. Defendants have an affirmative duty under FEHA to reasonably accommodate disabled workers. Such duty arises regardless of whether the employee requested any accommodation.

79. Defendants did not reasonably accommodate Plaintiff, who simply requested time-off for a surgical procedure and recovery time. Instead, Defendants decided to terminate Plaintiff, despite being notified of Plaintiff CAPUTO's disability.

80. Defendants did not reasonably accommodate Plaintiff, who simply requested time-off for a surgical procedure and recovery time. Instead, Defendants decided to terminate Plaintiff, despite being notified of Plaintiff CAPUTO's disability.

81. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including, but not limited to

substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorney's fees, all to her damage in an amount according to proof.

82. Said actions justify the imposition if punitive damages in that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amount to malice, and in conscious disregard of Plaintiff's rights. Based on the foregoing, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

### THIRD CAUSE OF ACTION

**Failure to Engage in the Interactive Process**

**(Plaintiff Against All Defendants)**

83. Plaintiff incorporates all paragraphs 1 through 82 above as though fully set forth herein.

84. Plaintiff CAPUTO suffered from a FEHA protected disability at various times throughout her employment with Defendants.

85. Defendants were aware of Plaintiff's disability, set forth in detail above, because Plaintiff informed Defendants and provided Defendants various medical notes and other forms of notice.

86. Pursuant to California Government Code § 12940(n), Defendants must engage in a timely, good faith interactive process. Defendants did not engage in a timely, good faith process with Plaintiff to find an accommodation for Plaintiff's disability.

87. Plaintiff did not cause the breakdown of the interactive process with Defendants. Rather, Defendants caused the breakdown in the interactive process with Plaintiff when they refused to

provide Plaintiff with accommodations. Instead of accommodating Plaintiff's work status, Defendants terminated Plaintiff.

88. By terminating Plaintiff, Defendants failed to engage in the timely, good faith interactive process; thus violating California Government Code § 12940(n).

89. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damages in an amount according to proof.

90. As a further legal result of Defendants' conduct, Plaintiff has been harmed in that he has suffered the intangible loss of such employment-related opportunities as experience and status in the positions previously held by him, those she would have held, all to her damage in an amount according to proof.

91. Said actions justify the imposition of punitive damages in that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, from an improper and evil motive amount to malice, and in conscious disregard of Plaintiff's rights. Plaintiff alleges that such actions and inactions were borne from malice, fraud, and oppression, and were ratified by multiple managerial agents of Defendants. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

//
//
//
//

PLAINTIFF PATRICIA CAPUTO'S FIRST AMENDED COMPLAINT

## **FOURTH CAUSE OF ACTION**

### **FEHA Retaliation**

### **(Plaintiff Against All Defendants)**

92. Plaintiff incorporates all paragraphs 1 through 87 above as though fully set forth herein.

93. At all times herein mentioned in this complaint, Government Code § 12940(a) was in full force and effect and binding on Defendants and Defendants were subject to its terms. Defendants wrongfully terminated Plaintiff CAPUTO.

94. In retaliation, Defendants subjected Plaintiff CAPUTO to an adverse employment action by wrongfully terminating Plaintiff. Specifically, Defendants terminated Plaintiff for requesting time-off for her medical leave.

95. Said retaliation was in violation of public policy because the sole and actual reason for Defendants' adverse employment action against Plaintiff was because Plaintiff engaged in a protected activity under FEHA.

96. Plaintiff CAPUTO is informed and believes, and thereon alleges, that her termination was because of her physical disability and for seeking the reasonable accommodation of taking medically recommended days-off of work.

97. Thus, Defendants' conduct violates various statutes and state law decisions, including California Government Code § 12940.

98. As a direct and legal result of Defendants' discrimination and retaliatory actions against Plaintiff for her requested medical leave, Plaintiff has suffered and continues to suffer general, consequential, and special damages including but not limited to substantial losses in earning, other

employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorney's fees, all to their damages in an amount according to proof.

99. Said actions justify the imposition of punitive damages in that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, from an improper and evil motive amount to malice, and in conscious disregard of Plaintiff's rights. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

## FIFTH CAUSE OF ACTION

### Retaliation in Violation of Labor Code § 1102.5

### (Plaintiff Against All Defendants)

100. Plaintiff incorporates all paragraphs 1 through 99 above as though fully set forth herein.

101. At all times herein mentioned in this Complaint, California Labor Code § 1102.5 et seq. was in full force and effect and binding on the Defendants and Defendants were subject to its terms. Defendants wrongfully retaliated against Plaintiff for reasons and in a manner contract to public policy, on a pre-textual basis.

102. Pursuant to California Labor Code § 1102.3, subdivision (c), an employer or any person acting on behalf of the employer shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of noncompliance with local, state, or federal rules or regulations.

103. Plaintiff CAPUTO is informed and believes, and thereon alleges, that her termination was because of her physical disability and for seeking the reasonable accommodation of taking medically

recommended days-off of work.

104. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to, substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to her damage in an amount according to proof.

105. Said retaliation was wrongful and justifies imposition of punitive damages since it was against public policy. Defendants intentionally discriminated and retaliated against Plaintiff on account of her protected activity, and in doing so, Defendants acted maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff. Based upon the foregoing, Plaintiff is entitled to recovery punitive damages from Defendants, and each of them, in an amount according to proof.

## **PRAYER**

1.  For damages according to proof, including unpaid wages;

2.  For interest on the amount, and other employee benefits at the prevailing legal rate;

3.  For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

4.  For statutory penalties pursuant to California Labor Code § 226(e);

5.  For statutory wage penalties pursuant to California Labor Code §§ 1770-1773;

6.  For restitution of unpaid wages to Plaintiff and prejudgment interest from the day such amount were due and payable;

7.  For reasonable attorney's fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

8.  For civil penalties pursuant to California Labor Code § 2699(a) and/or 2699(f) and (g) in the amount of at least one hundred dollars ($100) for each violation per pay period for the initial

violation and two hundred ($200) for each aggrieved employee per pay period for each subsequent violation, plus costs and attorneys' fees for violation of California Labor Code §§ 201, 202, 203, 204, 226 (a), 510, 1194, 1197, 1198, and 1770-1773 et seq., Wage Orders and 8 CCR § 3364;

9. For costs incurred by Plaintiff, including reasonable attorney's fees and costs of suit, in obtaining the benefits due Plaintiff and for violations of Plaintiff's civil rights as set or above; and pursuant to the Labor Code §§ 218.5, 218.6, 226(e), 1194(a), 2699; and California Code of Civil Procedure § 1021.5;

10. For punitive damages in an amount deemed appropriate and reasonable by the finder of fact; and

11. For such other and further relief as the court deems just and proper.

Dated: April 16, 2024          WEST COAST TRIAL LAWYERS, APLC

By: _____
     Ronald L. Zambrano, Esq.
     Nicholas A. Yasman, Esq.
     Attorney for Plaintiff,
     PATRICIA CAPUTO

PLAINTIFF PATRICIA CAPUTO'S FIRST AMENDED COMPLAINT

# **DEMAND FOR JURY TRIAL**

Plaintiff Patricia Caputo hereby demands trial by jury.

Dated:  April 16, 2024                    WEST COAST TRIAL LAWYERS, APLC


By: _____
    Ronald L. Zambrano, Esq.
    Nicholas A. Yasman, Esq.
    Attorney for Plaintiff,
    PATRICIA CAPUTO